UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                            :

EDGARDO DIAZ DIAZ,                     :

                       :

            *Plaintiff*,       :

                       :

     *-against-*             :

                       :    13 Civ. 2038 (PAC) (MHD)

THE CITY UNIVERSITY OF NEW YORK,  :
et al.,                      :

                       :    **OPINION PARTIALLY**

          *Defendants*.     :    **ADOPTING REPORT &**

                       :    **RECOMMENDATION**

                       :

-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9-22-15_

HONORABLE PAUL A. CROTTY, United States District Judge:

    *Pro se* Plaintiff Edgardo Diaz is a long time student and adjunct lecturer that claims

Defendants The City University of New York ("CUNY") and 23 CUNY employees[1] (the

"Individual Defendants") discriminated against him under Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e, the Age Discrimination in Employment Act of 1967

("ADEA"), 29 U.S.C. § 621, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec.

---

[1] The Individual Defendants are: (1) Jeremy Travis, President, John Jay College of Criminal Justice ("John Jay");
(2) Edwin Melendez, Director, Center for Puerto Rican Studies ("CENTRO"); (3) William Kelly, President, CUNY
Graduate School and University Center ("GSUC"); (4) Stephen Blum, Head of Ethnomusicology Division, GSUC;
(5) Peter Manuel, Assistant Professor, John Jay; (6) Peg Rivers; (7) David Olan, Director of Music Program, GSUC;
(8) Louise Lennihan, Associate Provost, GSUC; (9) Jose de Jesus, Associate Director, CENTRO; (10) Chase
Robinson, Provost & Senior Vice President for Academic Affairs, GSUC; (11) Matthew Schoengood, Vice
President for Student Affairs, GSUC; (12) Silvia Montalban, Affirmative Action Officer, John Jay; (13) Sylvia
Dapia, Department of Foreign Languages & Literatures, John Jay; (14) Isabel Martínez, Assistant Professor, John
Jay; (15) Lisandro Perez, Director, Department of Latin American Studies, John Jay; (16) Jane Bowers, Provost and
Senior Vice President for Academic Affairs, John Jay; (17) Virginia Gardner, Coordinator for Adjunct Services,
John Jay; (18) Edith Rivera, Chief Diversity Officer, GSUC; (19) Frederick Schaeffer, Senior Vice President for
Legal Affairs, CUNY; (20) Heather Parlier, Assistant General Counsel, CUNY; (21) Michael Liddy, Counsel,
CUNY; (22) Rosemary Maldonado, Assistant Vice President & Counsel, John Jay; and (23) Martin Ruck, Associate
Professor, GSUC.

Law § 290, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, and the Copyright Act, 17 U.S.C. § 501. Diaz Diaz alleges numerous instances of discrimination and retaliation claims in eighteen years as a graduate student and adjunct lecturer at CUNY. Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). On November 10, 2014, Magistrate Judge Michael A. Dolinger issued his Report & Recommendation ("R&R"), denying the motion to dismiss in part and granting the motion to dismiss in part.

Both Plaintiff and Defendants filed objections. Plaintiff argues primarily that his Copyright Act claims were improperly dismissed as untimely. Defendants argue that the R&R incorrectly determined that the Complaint complies with Fed. R. Civ. P. 8(a) and improperly held that Plaintiff adequately pleaded retaliation claims. The Court adopts the R&R except it determines that several retaliation claims have not been adequately pleaded. The motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

### I. Plaintiff's Allegations[2]

Plaintiff is a 60-year old Puerto Rican man, who describes himself as "a scholar in ethnomusicology, musician composer and writer", with a focus on "music in Puerto Rico, the Caribbean and Latin America." R&R at 4. Plaintiff was a graduate student at the CUNY Graduate School and University Center ("GSUC") from August 1993 to May 2002, as well as one semester in 2009. *Id.* From August 1993 to May 2011, Plaintiff also served as an adjunct

---

[2] The following is taken from Judge Dolinger's R&R, which in turn is taken from the Complaint. The Complaint consists of 99 pages, which includes the completed standard form "Complaint for Employment Discrimination", a 40-page document entitled "Complaint" with more detailed allegations, and copies of the series of documents Plaintiff sent to the Equal Employment Opportunity Commission ("EEOC") beginning in May 2011. The allegations are assumed to be true. *See Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

2

lecturer at various CUNY constituent colleges, including John Jay College of Criminal Justice ("John Jay"). *Id.*

Plaintiff enrolled at GSUC in 1993 to pursue a Ph.D. in Caribbean and Latin American music. *Id.* In around 1998, in anticipation of receiving his Ph.D., Plaintiff began applying for full-time positions at various universities. *Id.* at 5. He asked his advisors, Defendants Professor Stephen Blum and Professor Peter Manuel, for letters of recommendation, but they "ignored [his] request or refused to write the letters." *Id.* In 2002, four years later, still unable to obtain his Ph.D. or to secure a full-time faculty position, Plaintiff withdrew from GSUC. *Id.*

Plaintiff describes several interactions with CUNY employees during the 1990s that he asserts evidence discriminatory treatment of himself and other Latino students. He alleges that in 1994 Prof. Manuel published an article in which Prof. Manuel tried to prove that Puerto Rican music was produced through appropriation; Plaintiff alleges that this "clearly suggested that [Prof. Manuel] discriminated against [Plaintiff] on the grounds that [Plaintiff] is Puerto Rican." *Id.* at 6 n.3. Plaintiff also alleges that, in the "late 1990s", he was told by a Latina CUNY employee that another CUNY professor had said that "Latinos are good performers but bad students", which Plaintiff interpreted as "signal[ing] the existence of an environment resulting in discriminatory practices at the GSUC, and areas under the influence of the GSUC music program." *Id.* at 7.

Plaintiff alleges that during his time at GSUC many of his classmates, most of whom were white, obtained their Ph.D.'s and full-time faculty positions. *Id.* at 5-6. He claims that he was more qualified to earn a Ph.D. than most of the 101 students seeking graduate degrees because his works were more frequently cited in the Google Scholar index than all but three of his fellow students. *Id.* at 6. Plaintiff alleges that he has not yet obtained a Ph.D. because he is

Puerto Rican and alleges bias in CUNY's treatment of Hispanic students, particularly those students seeking music degrees. *Id.* at 5-6. Plaintiff also alleges that Latinos are underrepresented in the CUNY music program faculty. *Id.* at 7.

Although he withdrew from the graduate program in 2002, Plaintiff continued as an adjunct lecturer, teaching Spanish at CUNY. *Id.* at 8. In 2006, Plaintiff claims he began collaborating with Prof. Manuel on a book titled "Creolizing Contradanza in the Caribbean", which was ultimately published in 2009. *Id.* at 8-9. Prof. Manuel asked Plaintiff for information that Plaintiff had complied from his own music research to be used in the book. *Id.* Plaintiff alleges that Prof. Manuel "drew heavily" on Plaintiff's notes, reproducing some of Plaintiff's "original material" without giving him proper credit and mischaracterized Plaintiff as a "student" rather than as his "colleague". *Id.* Exhibits attached by the Plaintiff indicate that Plaintiff ultimately only contributed to one chapter in the book and was listed as a co-author for this chapter. *Id.* Plaintiff alleges violations of the Copyright Act premised on Prof. Manuel's alleged misappropriation of Plaintiff's research notes for use in the book. *Id.* at 2, 3 n.4.

In 2009, Plaintiff briefly reenrolled as a graduate student, again with Prof. Manuel as his advisor, in an effort to finish his dissertation and obtain a Ph.D. *Id.* at 11-12. Plaintiff describes several instances of alleged age and national-origin discrimination by Prof. Manuel during this time. In May 2008, at an initial meeting to discuss a plan for Plaintiff to finish his dissertation, Prof. Manuel stated: "Well, you finish that dissertation if energies are left for you to finish". *Id.* at 6 n.3. Around February 2009, Prof. Manuel sent Plaintiff an e-mail stating: "I want to see you finish your dissertation . . . I fear that it will be difficult. Your writing is very unclear, and it's not just a question of idiomatic English, but the general organization of sentences and paragraphs is unclear . . . You must try very hard to organize your thoughts and write them

4

coherently . . . I do worry about the dissertation as a whole." *Id.* Finally, during an argument about the book in December 2009, Prof. Manuel stated that they should not be "guided by either Cuban-nationalist diffusionism or resentful Puerto Rican nationalism." *Id.*

In 2009 and 2010, Plaintiff filed complaints with various CUNY administrators regarding Prof. Manuel's alleged misconduct in the preparation of the book. *Id.* at 10. On April 21, 2010, Plaintiff sent a letter to Defendant William Kelly, President of GSUC, complaining about Prof. Manuel's conduct. *Id.* President Kelly appointed Defendant Professor Martin Ruck to investigate the allegations. *Id.* On May 15, 2012, Prof. Ruck issued a report in which he concluded that Plaintiff was properly attributed in the book because Plaintiff's work had been that of a student working with a teacher. *Id.* Plaintiff disputes at length the findings of Prof. Ruck's report, and alleges that various other CUNY employees, including Defendants Prof. Blum, David Olan, and Peg Rivers, conspired to cover up Prof. Manuel's alleged improper conduct or retaliated against Plaintiff for sending the letter to President Kelly. *Id.* at 10-12.

On April 29, 2010, Defendant Silvia Montalban, Affirmative Action Officer at John Jay (where Plaintiff was teaching at the time), filed an internal report accusing Plaintiff of violating the college's policy against sexual harassment. *Id.* at 12. Plaintiff alleges that the report was based on "a brief and unsupported complaint by a white student", was "exaggerated", and amounted to an act of retaliation because it was filed eight days after he sent the letter to President Kelly. *Id.* Plaintiff alleges that, subsequent to the filing of the Montalban report, Defendant Jeremy Travis, President of John Jay, "retaliated" against Plaintiff "by accepting a biased, unfounded and exaggerated report . . . without due process and against the terms of the contractual agreement between CUNY and the union". *Id.* at 13.

In November 2010, Plaintiff sent an e-mail to President Travis in which Plaintiff

complained about the handling of the sexual harassment allegation and wrote that John Jay was not complying with CUNY's affirmative action and anti-discrimination policies. *Id.* at 14. In December 2010, GSUC announced that Dr. Ben Lapidus, a white instructor, was selected to teach a course on Cuban and Puerto Rican music. *Id.* Although Plaintiff acknowledges that he did not apply for that teaching position until January 2011, he alleges that, because he was more qualified than Dr. Lapidus, the decision to appoint Dr. Lapidus was retaliation for the November 2010 e-mail to President Travis. *Id.* at 14-15.

In April 2011, Defendant Isabel Martinez, an Assistant Professor at John Jay, observed one of Plaintiff's classes and subsequently issued a negative report. *Id.* at 13. Later that same month, Plaintiff was notified that his teaching contract at John Jay would not be renewed, effective June 2011. *Id.* at 15. Plaintiff alleges that the non-renewal decision was retaliatory. *Id.* at 13.

In May 2011, Plaintiff filed charges with the EEOC, alleging age and national-origin discrimination and retaliation. *Id.* at 16. At the time, Plaintiff was working as a music editor for an e-magazine at the CUNY Center of Puerto Rican Studies ("CENTRO"). Plaintiff alleges that in June 2011, shortly after he had filed the EEOC charges, Defendant Edwin Melendez, Director of CENTRO, told Plaintiff that his position as music editor was shaky and he should consider focusing on getting his Ph.D. *Id.* at 18 n.16. Plaintiff also alleges that Melendez and several other CUNY employees retaliated against him by adding a Ph.D. requirement for a teaching position at CENTRO that he had applied for in July 2011, thus rendering him ineligible for the position. *Id.* at 16-17. Plaintiff further alleges that he applied but was not selected for several other teaching positions at various CUNY colleges, which Plaintiff implies was due to discrimination or retaliation for filing the EEOC charges. *Id.* at 18. Finally, Plaintiff alleges that

6

his EEOC charges resulted in a drastic reduction of Latino faculty in the CUNY music departments. *Id.* at 19. The EEOC found no likelihood of a violation and issued a right-to-sue letter to Plaintiff on December 20, 2012; Plaintiff asserts that he received that letter on January 4, 2013. *Id.* at 16 n.15.

Plaintiff brought this action on March 26, 2013. *Id.* In brief, Plaintiff alleges "discrimination [based on national origin and age], sabotage to my professional development, intentional infliction of emotional distress, sabotage of my employment, conspiracy to do copyright infringements, conspiracy for covering up these copyright infringements, falsification of documents, and primarily retaliation after I denounced their acts as discriminatory on the basis of national origin and age." *Id.* at 3 n.2.

Defendants moved to dismiss on numerous grounds. First, they argued that the Complaint does not comply with Fed. R. Civ. P. 8(a) because the pleading does not contain a short and plain statement of the claims. *Id.* at 19. Second, they argued that most of the claims under Title VII, the ADEA, the NYSHRL, the NYCHRL and the Copyright Act are barred by the applicable limitations periods. *Id.* at 19-20. Third, they argued that Plaintiff's ADEA and state claims against CUNY are barred by sovereign immunity. *Id.* at 20. Fourth, they argued that the Complaint fails to state any timely claim for national-origin discrimination, age discrimination, or retaliation against any of the Defendants, under either federal or state laws. *Id.* Fifth, they argued that claims against the Individual Defendants under Title VII and the ADEA should be dismissed because neither statute provides for individual liability. *Id.*

## II. The Report and Recommendation

On November 10, 2014, Magistrate Judge Dolinger issued a thorough and comprehensive

7

R&R. He recommended:

1. The Complaint complies with Rule 8(a). "Notwithstanding its length and meandering account, the complaint fairly places the defendants on notice of the claims that plaintiff is asserting against them." *Id.* at 21-22.

2. Plaintiff's Title VII and ADEA claims comply with the requirement that they be filed within 90 days of receipt of the EEOC right-to-sue letter. *Id.* at 23.

3. Under Title VII and the ADEA, claims must be filed with the EEOC within 300 days of the alleged wrongful act. *Id.* at 24 (citing 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B)). Since Plaintiff filed his claims with the EEOC on May 15, 2011, any claims arising from alleged wrongful acts occurring before July 19, 2010 are untimely. *Id.* This includes most of Plaintiff's national-origin discrimination claims, including claims premised on Plaintiff's book collaboration with Prof. Manuel and Montalban's April 2010 report alleging violations of the sexual harassment policy, as well as Plaintiff's sole colorable age discrimination claim, premised on Prof. Manuel's statement in May 2008 that Plaintiff "could finish that dissertation if energies are left for you to finish." *Id.* at 24-25. The claims should be dismissed with prejudice. *Id.* at 88-89.

4. Because the NYSHRL and the NYCHRL have three-year limitations periods, claims premised on alleged wrongful acts occurring before March 26, 2010 are untimely. *Id.* at 29 (citing N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d)). This renders untimely the sole age discrimination claim and many of the national-origin discrimination claims, although not claims premised on the Montalban report. *Id.* at 29-33, 71-72. Such claims should be dismissed with prejudice. *Id.* at 89.

5. The Copyright Act has a three-year limitations period, running from the date of discovery. *Id.* at 29 (citing 17 U.S.C. § 507(b)). Plaintiff's sole Copyright Act claim, premised on his book collaboration with Prof. Manuel, is untimely because Plaintiff was aware of the alleged violation in 2009. *Id.* This claim should be

8

dismissed with prejudice. *Id.* at 89.

6. Timely claims under the NYSHRL, the NYCHRL, and the ADEA against CUNY itself should be dismissed on grounds of sovereign immunity. *Id.* at 33-34. Such claims under the ADEA should be dismissed with prejudice; such claims under the NYSHRL and the NYCHRL should be dismissed without prejudice and with leave to refile in state court. *Id.* at 89.[3]

7. Title VII and the ADEA do not provide for individual liability when the employer is a corporation or other entity. *Id.* at 85 (citing *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012); *Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 334, 354-55 (E.D.N.Y. 2013)). Any timely claims under those statutes against the Individual Defendants should be dismissed with prejudice. *Id.* at 85, 89.

8. Title VII and the ADEA only protect rights involving an employer-employee relationship, not those involving a student-teacher relationship. *Id.* at 44-45 (citing 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)). Claims under those statutes premised on Plaintiff's inability to obtain a Ph.D. due to Defendants' alleged discrimination against minority groups—because they are premised on Plaintiff's role as a student and not an employee—should be dismissed with prejudice. *Id.* at 45, 89.

9. Plaintiff fails to state a claim for intentional infliction of emotional distress, sabotage of professional development, conspiracy, forgery, or destruction of documents. *Id.* at 77-85. All such claims, to the extent they are even legally cognizable, should be dismissed with prejudice.

---

[3] The Court agrees with Defendants that there is an apparent typographical error on Page 90 of the R&R. *See* Def. Objection to R&R at 3 n.1. The R&R states that NYSHRL and NYCHRL claims against CUNY should be dismissed on grounds of sovereign immunity, R&R at 33-34, but then in the conclusion says that such claims can be asserted, *id.* at 90. The Court reads the R&R's determination regarding these claims to be the sentence that follows soon after on the same page: "All timely claims asserted against CUNY under the NYSHRL and the NYCHRL must be dismissed with leave to refile in state court." *Id.*

10. Plaintiff fails to adequately plead any national-origin discrimination claims.
    Plaintiff adequately pleads the first two elements of the *McDonnell Douglas*
    four-element burden-shifting framework. *See infra* p. 13. First, he is a member
    of a protected class (Puerto Rican). R&R at 49. Second, he was apparently
    qualified for the positions he held at CUNY. *Id.* at 50. Regarding the third
    element, the Complaint adequately alleges four instances of timely "adverse
    employment actions": (i) GSUC's decision not to appoint Plaintiff to a teaching
    position in January 2011; (ii) John Jay's decision not to renew his adjunct lecturer
    position in April 2011; (iii) CENTRO's decision not to appoint him to a teaching
    position in Fall 2011; and (iv) the decisions of various CUNY schools not to
    appoint him for teaching positions beginning in June 2011. *Id.* at 52. However,
    the fourth element—facts showing that the adverse employment action took place
    under circumstances giving rise to an inference of discrimination—is not
    adequately pleaded for any of the adverse actions. *Id.* at 54-60. There are no
    allegations in the Complaint that provide "a plausible ground for inferring animus
    to plaintiff based on his national origin, much less that such animus was a
    motivating factor in the termination of his position at John Jay or the denial to
    him of appointments in other CUNY institutions." *Id.* at 55-56. All such timely
    claims should be dismissed without prejudice. *Id.* at 89.

11. Plaintiff adequately pleads several timely Title VII retaliation claims and parallel
    retaliation provisions under the NYSHRL and NYCHRL. *Id.* at 60-77; *see infra*
    p. 14. Plaintiff adequately alleges three protected activities: (i) Plaintiff's April
    2010 e-mail to GSUC President Kelly regarding alleged misconduct by Prof.
    Manuel during their work on the book; (ii) Plaintiff's November 2010 e-mail to
    John Jay President Travis regarding the school's affirmative action policy; and
    (iii) Plaintiff's May 2011 EEOC filing. *Id.* at 65-66.

    Plaintiff adequately alleges three adverse actions causally connected to the
    protected activities: (i) the April 2010 internal report by Silvia Montalban, filed
    eight days after Plaintiff sent the Kelly letter, accusing Plaintiff of violating
    CUNY's policy against sexual harassment; (ii) the non-renewal of Plaintiff's

10

teaching contract in July 2011; and (iii) threats to Plaintiff's editorial position at
the CENTRO e-magazine in May 2011 and denial of a CENTRO teaching
position in October 2011. *Id.* at 69-70, 73. Further, the negative performance
evaluation prepared by Isabel Martinez in April 2011, while not an adverse
employment action itself, is adequately pleaded as a contributing factor to
Plaintiff's termination in July 2011. *Id.* at 72.

Based on those findings, the Complaint adequately pleads timely retaliation
claims under the NYSHRL and NYCHRL against (i) Montalban for filing the
sexual harassment report; (ii) Travis for termination of Plaintiff's teaching
position at John Jay; (iii) Martinez for issuing a negative teaching review that
contributed to the termination decision; and (iv) Melendez for failure to hire
Plaintiff at CENTRO. *Id.* at 88. The Complaint also adequately pleads those
claims under Title VII against CUNY. *Id.* at 89.

## III.    Plaintiff's and Defendants' Objections

Plaintiff filed a lengthy objection to the R&R, nearly all which focuses on his Copyright
Act claim. Plaintiff argues that the claim is timely under a theory of fraudulent concealment,
asserting that concealment, delays, and other improper actions by Prof. Manuel, Prof. Ruck, and
other Defendants denied him access to necessary information, thus tolling the limitations period
and rendering the claim timely. *See, e.g.*, Pl. Objection to R&R at 2. Further, Plaintiff briefly
objects to the dismissal of Title VII discrimination claims premised on statements made by Prof.
Manuel to Plaintiff in 2008. *Id.* at 49-50. Plaintiff argues that Prof. Manuel's statements were
made to "sabotage the progress of a Puerto Rican scholar" and are "clearly discriminatory".

Defendants make two objections to the R&R. First, they reassert that the Complaint
violates Rule 8(a) because the hundreds of pages between Plaintiff's Complaint and opposition
filings "presents an undue burden upon the Court and [Defendants] to have to sort through this

11

mass of verbiage to identify the nature of Plaintiff's claims both in moving to dismiss, prosecuting these objections and in answering and going forward with this litigation." Def. Objection to R&R at 4.

Second, Defendants object to the retaliation claims that the R&R determined were adequately pleaded. Defendants argue that the retaliation claims against Martinez and Montalban fail because (i) neither Montalban's sexual harassment report nor Martinez's negative evaluation is an adverse employment action and (ii) the Complaint does not allege that either Defendant was aware of the Kelly letter (the alleged protected activity). *Id.* at 5-10. Defendants argue that the retaliation claim against Travis fails because the Complaint does not allege a sufficient causal connection between the filing of the Travis Letter in November 2010 and Plaintiff's termination in June 2011. *Id.* at 10-11.

## DISCUSSION

### I. Legal Standards

#### A. Review of a Report & Recommendation

The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When no objections are made, the Court reviews the R&R for clear error. *See La Torres v. Walker*, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). If a party objects, however, the Court conducts a *de novo* review of the R&R's contested portions. *See Idlisan v. Mount Sinai Medical Center*, No. 12 Civ. 8935 (PAC) (RLE), 2015 WL 136012, at * 2 (S.D.N.Y. Jan. 9, 2015). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007) (internal quotation marks omitted). In other words, the

12

objecting party must point to the specific parts of the R&R to which he objects and must articulate clear reasons for his objections. When objections are made by a *pro se* litigant, the Court construes the objections in their best light. *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

**B.   Motion to Dismiss Standard**

On motion to dismiss for failure to state a claim, the Court accepts as true all of the factual allegations contained in the complaint and construes the complaint in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court only "assess[es] the legal feasibility of the complaint"; it does not "assay the weight of the evidence which might be offered in support thereof." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) (internal quotation marks omitted). To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While this standard applies to complaints submitted by *pro se* plaintiffs, such pleadings are read liberally and the Court derives from them the most reasonable claims and arguments that they may be read to imply. *See Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014).

**C.   Discrimination Claims Under Title VII, NYSHRL, and NYCHRL**

Under Title VII, it is unlawful for an employer to discriminate against an employee based on the employee's national origin. 42 U.S.C. § 2000e-2(a)(1). To plead a Title VII discrimination claim, a plaintiff must allege "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motive". *Littlejohn v. City of New York*, No. 14-1395-cv, 2015 WL 460250, at *4, *7 (2d Cir.

13

Aug. 3, 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "[S]uch a
showing will raise a temporary 'presumption' of discriminatory motivation, shifting the burden
of production to the employer and requiring the employer to come forward with its justification
for the adverse employment action against the plaintiff." *Id.* at \*4.

Under both the NYSHRL and the NYCHRL, it is unlawful for an employer to
discriminate against an employee because of his national origin. N.Y. Exec. Law § 296(1)(a);
N.Y.C. Admin. Code § 8-107(1)(a). Discrimination claims under both statutes are analyzed
under the *McDonnell Douglas* framework described above. *See Abdu-Brisson v. Delta Air Lines,
Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

### D. Retaliation Claims Under Title VII, NYSHRL, and NYCHRL

Title VII also prohibits "retaliation against an employee for complaining of prohibited
employment discrimination". *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (citing 42
U.S.C. § 2000e-3(a)). To adequately plead a retaliation claim, a plaintiff must allege that "(1)
she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee
suffered a materially adverse action; and (4) there was a causal connection between the protected
activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs.*, 716 F.3d 10, 14 (2d Cir.
2013).

As to the third element, "there are no bright-line rules with respect to what constitutes an
adverse employment action for purposes of a retaliation claim". *Fincher v. Depository Trust and
Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (internal quotation marks omitted). An action
is "adverse" if it "might have dissuaded a reasonable worker from making or supporting a charge
of discrimination." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 67, 68
(2006)). The action is "material" if it results in significant harm, not harm that is merely trivial.

14

*Id.*

As to the fourth element, Title VII retaliation claims require that the plaintiff allege (and ultimately prove) "but-for" causation—he must show that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533 (2013). "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Cifra*, 252 F.3d 217. There is no bright line point at which the temporal proximity becomes too attenuated; rather the Court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (internal quotation marks and citation omitted). In the context of multiple employer actors in a single organization, the plaintiff need not show that the "particular individuals who carried out an adverse action knew of the protected activity". *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 148 (2d Cir. 2010). But he must show, at a minimum, that the individual who carried out the adverse action did so pursuant to explicit or implicit orders of or encouragement by a superior who did possess knowledge of the protected activity. *Id.*

NYSHRL retaliation claims are analyzed under that same standards as Title VII retaliation claims. *Brown v. Daikin America, Inc.*, 756 F.3d 219, 225-26 (2d Cir. 2014). NYCRHL retaliation claims are somewhat more lenient. The plaintiff need not show that the adverse action resulted in material harm; he need only show that "the employer engaged in conduct that was reasonably likely to deter a person from engaging in [the protected activity]." *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 112 (2d Cir. 2013).

## II. Analysis

For clarity, we consider each of the R&R's recommendations in turn, as set forth at pages 8-14.

- **Recommendation 1: Compliance with Rule 8(a)**

Defendants object to the R&R's determination that the Complaint complies with Fed. R. Civ. P. 8(a), arguing that the "lengthy and rambling pleading" does not provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Def. Objection to R&R at 3 (quoting Fed. R. Civ. P. 8(a)). Defendants "simply reiterate[] [their] original arguments", so the Court reviews for clear error. *Silva*, 509 F. Supp. 2d at 366. The R&R's determination is not clear error and is adopted by the Court. The Complaint complies with Rule 8(a) since it provides the Defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) (internal quotation marks omitted). While the Complaint is unnecessarily long and not well organized, those flaws are not fatal given Plaintiff's *pro se* status. *See Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005).

- **Recommendation 2: Title VII and ADEA Filing Period**

Neither party objects to the R&R's determination that Plaintiff has adequately pleaded that he filed with the Court within 90 days of receipt of the EEOC right-to-sue-letter. That determination is not clear error and is adopted by the Court.

- **Recommendation 3: EEOC Filing Period for Title VII and ADEA Claims**

Neither party objects to the R&R's determination that discrimination claims under Title VII and the ADEA premised on alleged misconduct occurring before July 19, 2010 are untimely because they are outside the 300-day EEOC filing period and should be dismissed with

16

prejudice. That determination is not clear error and is adopted by the Court.

> • **Recommendation 4: NYSHRL and NYCHRL Limitations Period**

Neither party objects to the R&R's determination that claims under the NYSHRL and the NYCHRL premised on alleged misconduct occurring before March 26, 2010 are untimely because they occurred outside the three-year limitations period and should be dismissed with prejudice. That determination is not clear error and is adopted by the Court.

> • **Recommendation 5: Copyright Act Limitations Period**

Plaintiff objects to the R&R's determination that his Copyright Act claim, premised on alleged misconduct by Prof. Manuel during their book collaboration from 2006 to 2009, is untimely. Plaintiff argues in substance that the limitations period for the Copyright Act claim should be tolled because Prof. Manuel and others engaged in "fraudulent concealment", thus preventing Plaintiff from uncovering the violation within the limitations period. The argument is rejected.

A civil claim under the Copyright Act "must be 'commenced within three years after the claim accrued.'" *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014) (quoting 17 U.S.C. § 507(b)). A claim accrues when "the copyright holder discovers, or with due diligence should have discovered, the infringement". *Id.* A "statute of limitations may be equitably tolled due to the defendant's fraudulent concealment if the plaintiff establishes that '(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.'" *Lewin v. Richard Avedon Foundation*, No. 11-CV-8767, 2015 WL 3948824, at \*5 (S.D.N.Y. June 26, 2015) (quoting *Koch v. Christie's Int'l PLC*, 699

17

F.3d 141, 157 (2d Cir. 2012)).

Based on his argument for fraudulent concealment, there is no doubt that Plaintiff knew no later than February 2009 of the alleged copyright violations by Prof. Manuel and various CUNY administrators. Since Plaintiff possessed more than sufficient information as of February 2009 to complain, he is not entitled to equitable tolling under the Copyright Act. Indeed, the book was published in 2009, outside the limitations period. The Court holds that the Copyright Act claim is untimely and is dismissed with prejudice.

- **Recommendation 6: NYSHRL, NYCHRL, and ADEA Claims Against CUNY**

Neither party objects to the R&R's determination that claims under the ADEA against CUNY are barred by sovereign immunity and should be dismissed with prejudice. Likewise, neither party objects to the R&R's determination that claims under the NYSHRL and the NYCHRL are also barred by sovereign immunity and should be dismissed without prejudice with leave to refile in state court. Those determinations are not clear error and are adopted by the Court.

- **Recommendation 7: Title VII and ADEA Claims Against Individual Defendants**

Neither party objects to the R&R's determination that discrimination claims under Title VII and the ADEA lie against employers only and not individual employees. The R&R determined that there is no basis for claims against the Individual Defendants and they should be dismissed with prejudice. Those determinations are not clear error and are adopted by the Court.

- **Recommendation 8: Claims Not Involving Employer-Employee Relationship**

Neither party objects to the R&R's determination that claims regarding plaintiff's inability to obtain a Ph.D., which are not premised on an employee-employer relationship, cannot be brought under Title VII or the ADEA and should be dismissed with prejudice. Those

determinations are not clear error and are adopted by the Court.

- **Recommendation 9: Other Claims**

Neither party objects to the R&R's determination that the Complaint fails to state a claim

for intentional infliction of emotional distress, sabotage of professional development, conspiracy,

forgery, or destruction of evidence, and that those claims those be dismissed with prejudice.

Those determinations are not clear error and are adopted by the Court.

- **Recommendation 10: National-Origin Discrimination Claims**

Neither party objects to the R&R's determination that the Complaint adequately alleges

the first three elements of the *McDonnell Douglas* framework for four timely national-origin

discrimination claims: (i) GSUC's decision not to appoint Plaintiff to a teaching position in

January 2011; (ii) John Jay's decision not to renew Plaintiff's teaching contract in April 2011;

(iii) CENTRO's decision not to hire Plaintiff for a teaching position in Fall 2011; and (iv) the

decision by several CUNY schools not to hire Plaintiff for other teaching positions beginning in

June 2011. R&R at 52. Nor does either party object to the R&R's determination that the

Complaint does not adequately allege the fourth *McDonnell Douglas* element—facts showing

that the adverse employment actions took place under circumstances giving rise to an inference

of discrimination—for any of those claims. *Id.* at 54-60.

An inference of discrimination may be established from a variety of circumstances, such

as "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its

invidious comments about others in the employee's protected group; or the more favorable

treatment of employees not in the protected group; or the sequence of events leading to the

plaintiff's discharge". *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir 2009) (internal

quotation marks omitted). Discrimination cannot be inferred, however, simply from "stray

19

remarks", particularly when these remarks are made by "persons with a significant distance in terms of both time and institutional hierarchy from the ultimate decision-makers". *Hengjun Chao v. Mount Sinai Hosp.*, 476 Fed. App'x 892, 896 (2d Cir. 2012) (internal quotation marks omitted).

The R&R concluded that the Complaint fails to allege a plausible inference of discrimination because it alleges only isolated comments by disparate CUNY employees (none of whom were ultimate decision-makers) spread over several years, along with a purported statistical analysis that offers at best "rough approximations of the number of Latino academics in the CUNY music departments at one point in time". R&R at 55. The isolated comments, along with the hiring and termination decisions, were made by individuals spread across several CUNY institutions, and there is no basis to infer that any discrimination by decision-makers at one institution affected decision-makers at other institutions. *Id.* at 57. Further, the R&R noted that an inference of discrimination by CUNY is undercut by the fact that Plaintiff was continuously employed at CUNY institutions for nearly two decades. *Id.*

Those determinations are not clear error and are adopted by the Court. The timely national-origin discrimination claims are dismissed without prejudice.

- **Recommendation 11: Retaliation Claims**

The R&R determined that Plaintiff adequately pleads four timely retaliation claims against four individuals under the NYSHRL and the NYCHRL and three related claims against CUNY under Title VII. Those claims are premised on: (i) the sexual harassment report filed by Silvia Montalban in April 2010 in retaliation for the Kelly letter[4]; (ii) the negative performance

---

[4] Because this claim is premised on conduct occurring before July 19, 2010, the R&R determined—and the Court agrees—that this claim is not timely against CUNY under Title VII. *See supra* p. 16 (Recommendation 3).

20

evaluation by Isabel Martinez in April 2011 in retaliation for the Travis e-mail; (iii) the non-renewal of Plaintiff's teaching position in April 2011 by Jeremy Travis, in retaliation for the Travis e-mail; and (iv) Edwin Melendez's July 2011 decision not to hire Plaintiff for a CENTRO teaching position and pressuring him to leave his editorial position, in retaliation for the May 2011 EEOC filing. *See* R&R at 88.

Defendants object to three of those determinations. They argue that the Complaint fails to state retaliation claims against Montalban and Martinez because neither Montalban's sexual harassment report nor Martinez's negative report is an actionable adverse action and the Complaint does not allege that either Defendant was aware of Plaintiff's protected activities. Def. Objection to R&R at 5-10. Further, Defendants argue that the Complaint fails to state a retaliation claim against Travis because the five months between the Travis e-mail and the non-renewal of Plaintiff's teaching contract is too long to allow for an inference of causation. Id. at 10-11. Defendants do not object to the retaliation claims against Melendez. We consider each claim in turn:

    o April 2010 Montalban Report

The R&R determined that the Complaint adequately alleges that the Montalban report was an "adverse action" because its allegations would be a "sufficiently severe blow to an academic's standing in the University community". R&R at 69-70. The R&R determined that the Complaint adequately pleaded the necessary causal connection between the Kelly letter (the protected activity) and the Montalban report (the adverse action) because the report was issued eight days after the letter. *Id.* at 70. The R&R noted that while "plaintiff does not explicitly plead that Ms. Montalban knew of the letter to Pres. Kelly, and there may well be reason to doubt that she did", the claim was nonetheless adequately pleaded. *Id.* at 70 n.37.

21

The Court agrees that the filing of the Montalban report is an adverse action because it reasonably could have dissuaded Plaintiff from pursuing his discrimination claims by harming his standing in the CUNY community. This is particularly so for the NYCHRL claim, which does not require a showing of material harm. But the Court disagrees that the Complaint adequately pleads the causal connection between protected activity and adverse action. Simply put, the Complaint provides no grounds to plausibly conclude that Montalban, an employee at John Jay, had any knowledge of the letter sent to Kelly, an employee at GSUC. Temporal proximity alone is not sufficient where there is no reason to infer that the individual who carried out the adverse action had knowledge of the protected activity or was acting pursuant to the instructions or encouragement of a superior with such knowledge. *See Wyeth Pharmaceuticals*, 616 F.3d at 148. The retaliation claims under the NYSHRL and the NYCHRL premised on the Montalban report are dismissed without prejudice.

o April 2011 Martinez Teaching Evaluation

For a similar reason, the Court concludes that Plaintiff does not adequately plead a retaliation claim against Martinez premised on Martinez's negative teaching evaluation in April 2011. Plaintiff does not plead any facts from which one could plausibly conclude that Martinez was aware of the e-mail that Plaintiff sent to Travis in November 2010 urging Travis to evaluate John Jay's affirmative action and anti-discrimination compliance, let alone that the e-mail was the cause of the negative evaluation. While the five months between the two events by itself is not enough to vitiate the claim, *see Espinal v. Goord*, 558 F.3d at 129, the substantial amount of elapsed time does make the inference of a causal connection less plausible. The retaliation claims under the NYSHRL and the NYCHRL premised on the Martinez evaluation, along with the related Title VII claim against CUNY, are dismissed without prejudice.

22

o April 2011 John Jay Employment Non-Renewal

Plaintiff does, however, adequately plead a retaliation claim against Travis, President of John Jay, for the non-renewal of Plaintiff's teaching contract in April 2011. Defendants argue that the five months between when Plaintiff sent the Travis e-mail and when he was informed that his contract would not be renewed render an inference of a causal connection implausible. Def. Objection to R&R at 11. But Plaintiff alleges that, per the terms of Plaintiff's union employment contract, April 2011 was the first opportunity for John Jay to terminate Plaintiff's teaching contract. *See* Pl. Resp. to Def. Objection to R&R at 11. It is thus plausible that Travis waited until the expiration of Plaintiff's teaching contract to retaliate against the Travis e-mail. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013) (finding an inference of a causal connection where "the adverse action occurred at the first actual opportunity to retaliate"). The retaliation claims against Travis under the NYSHRL and the NYCHRL premised on the non-renewal of Plaintiff's teaching contract at John Jay are adequately pleaded. The related retaliation claim against CUNY under Title VII is also adequately pleaded.

o July 2011 CENTRO Claims

The R&R determined that the Complaint adequately alleges retaliation claims premised on Melendez pressuring Plaintiff to relinquish his CENTRO editorial position and CENTRO and failing to offer Plaintiff a CENTRO teaching position. R&R at 73. The R&R reasoned that it can be reasonably inferred that Melendez and other decision-makers at CENTRO were aware of the EEOC filing, which Plaintiff submitted shortly before the alleged adverse actions. *Id.* Defendants do not object to this determination and the Court determines that it is not clear error. The retaliation claims against Melendez under the NYSHRL and the NYCHRL premised on those alleged adverse actions, along with the related retaliation claim against CUNY under Title

VII, are adequately pleaded.

## CONCLUSION

The Court adopts the R&R in part, GRANTS the motion to dismiss in part, and DENIES

the motion to dismiss in part. Plaintiff's surviving claims are (i) against Travis under the

NYSHRL and the NYCHRL and against CUNY under Title VII, all for retaliation premised on

the non-renewal of Plaintiff's teaching position at John Jay in April 2011; and (ii) against

Melendez under the NYSHRL and the NYCHRL and against CUNY under Title VII, all for

retaliation premised on Melendez pressuring Plaintiff to relinquish his editorial position at

CENTRO and for CENTRO's decision not to offer Plaintiff a teaching position in 2011. All

other claims against CUNY and all other Defendants are dismissed. Reference to the Magistrate

Judge is continued. The Clerk is directed to terminate the motion at Docket # 34.


Dated: New York, New York                          SO ORDERED
       September 22, 2015

                                                   _____
                                                   PAUL A. CROTTY
                                                   United States District Judge


24